OPINION
Plaintiff-appellant Dwight M. Whitt appeals the February 20, 1998 Judgment Entry/Decree of Divorce of the Fairfield County Court of Common Pleas, Domestic Relations Division, granting custody of his minor child to defendant-appellee Hollie M. Whitt, ordering him to pay child support and spousal support, and ordering standard companionship.
 STATEMENT OF THE FACTS AND CASE
Appellant and appellee were married on November 2, 1996. One child, Andrew Michael (DOB 8/23/96), was born as issue of said union. Appellee was a minor when she gave birth to Andrew. Upon turning eighteen on September 13, 1996, appellee moved out of her parents' home and into appellant's father's home with Andrew.
On April 27, 1997, appellee returned to her parents' home with Andrew. On May 6, 1997, appellant filed a complaint for divorce in the Fairfield County Court of Common Pleas, Domestic Relations Division. On May 8, 1997, appellee filed an answer and a counterclaim for divorce. On that same day, the trial court signed an ex parte entry granting custody of the child to appellee pending an oral hearing on the parties' motions for temporary custody scheduled for May 15, 1997.
After hearing testimony, the trial court named appellee as the temporary residential parent. The trial court granted appellant companionship pursuant to Rule 17 of the Local Rules of the Fairfield County Domestic Relations Court. Via Judgment Entry dated May 30, 1997, the trial court ordered appellant to pay temporary child support.[1]
On October 9, 1997, appellee filed a motion requesting the trial court find appellant in contempt for failure to pay child support. At a hearing on December 4, 1997, appellee admitted to being in contempt of court. The trial court deferred sentencing on the contempt pending the final hearing. The matter proceeded to final hearing on December 12, 1997.
The following evidence was adduced at the hearing. Both parties were unemployed. While in high school and after graduation, appellee worked part-time as a grocery store clerk and a restaurant hostess. Appellee is currently enrolled full-time as a student in a two year associate's degree program in physical therapy. Appellant was on unemployment compensation and not attending school. Previously, appellant worked at Wal-Mart, Reynolds Aluminum[2], and then Cooks Creek Golf Course.
Appellant never lived outside of his parents' home, currently residing with his father. Except for a brief period during which she lived with appellant in his father's home, appellee has always lived with her parents. Since his birth, Andrew have resided with appellee. Appellant has never resided with the child without appellee.
Appellant and appellee assisted in caring for the child, but appellee is the primary caretaker. Both appellee and appellant engaged in acts of immaturity. For example, appellee woke Andrew in the middle of the night to go shopping at Wal-Mart. In an attempt to gain appellee's attention, appellant lied to her about Andrew's having a broken arm.
After hearing two days of testimony, the trial court took the matter under advisement. On December 26, 1997, appellee allowed appellant to exercise Christmas visitation with Andrew. When appellant failed to return the child, appellee filed a motion for an ex parte order requiring appellant to return the child. The trial court signed the order on December 31, 1997, which was subsequently enforced by the Fairfield County Sheriff's Department.
On January 15, 1998, the trial court issued a memorandum entry naming appellee as the residential parent and ruling on all pending motions. Pursuant to Civ.R. 52, appellant filed a request for findings of fact and conclusions of law. The trial court instructed the parties to submit proposed findings of fact and conclusions of law. On February 17, 1998, the trial court issued its Findings of Facts and Conclusions of Law.
Via Judgment Entry/Decree of Divorce dated February 20, 1998, the trial court ordered the marriage relationship between appellant and appellee terminated. The trial court designated appellee as the residential parent and legal custodian of the child and provided appellant with standard companionship as specified in Local R. 17. The trial court ordered appellant to obtain a $25,000 life insurance policy listing appellee as the beneficiary to insure the payment of the child support award. The order allows for the termination of the policy or change of beneficiary when the child reaches the age of 18. Additionally, the trial court ordered appellant to pay $316.52 per month, plus poundage, as and for child support, and $100.00 per month, for twenty-four months, as and for spousal support. The spousal support award was non-modifiable as the trial court did not retain jurisdiction over the issue.
It is from the Judgment Entry/Decree of Divorce appellant appeals, raising the following assignments of error:
 I. DID THE COURT COMMIT PREJUDICIAL ERROR WHEN IT NOMINATED MOTHER RESIDENTIAL PARENT/LEGAL CUSTODIAN OF ANDREW MICHAEL WHITT, DOB 8/23/96?
 II. DID THE COURT COMMIT PREJUDICIAL ERROR WHEN IT AWARDED DEFENDANT SPOUSAL SUPPORT?
 III. DID THE COURT COMMIT PREJUDICIAL ERROR IN THE AMOUNT OF VISITATION IT GRANTED TO PLAINTIFF?
 IV. DID THE COURT COMMIT PREJUDICIAL ERROR WHEN IT ORDERED PLAINTIFF TO OBTAIN PRIVATE LIFE INSURANCE AT HIS EXPENSE?
 V. DID THE COURT COMMIT PREJUDICIAL ERROR IN THE AMOUNT OF CHILD SUPPORT ORDERED?
 I
In his first assignment of error, appellant maintains the trial court abused its discretion in designating appellee as the residential parent and legal custodian of the parties' minor child.
The applicable standard of review is abuse of discretion.Miller v. Miller (1988), 37 Ohio St.3d 71. An abuse of discretion connotes more than an error of law or judgment, it implies the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
Pursuant to R.C. 3109.04(F)(1), the trial court is to consider certain factors in determining the best interest of a child when allocating parental rights and responsibilities for the care of the child:
 (F)(1) In determining the best interest of a child pursuant to this section, * * * the court shall consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense * * *
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
In his Brief to this Court, appellant argues the trial court ignored, misstated, or gave short shrift to the statutory factors set forth in R.C. 3109.04(F)(1). Appellant further argues the trial court impermissibly relied upon the tender years doctrine.
In its Findings of Facts and Conclusions of Law, the trial court specifically addressed each of the factors set forth in R.C.3109.04(F)(1):
 A. Each parent has requested that they be named the residential parent of the child. There were no motions for shared parenting filed.
 B. Given the young age of the child, there was no request to interview the child in chambers.
 C. The child has a significant interest in the relationship with [appellee], his aunt and his maternal grandparents who all reside in his current home setting.
 D. The child has adjusted well to his present living situation at home and in his community. He is too young to attend school.
 E. Aside from the acts of immaturity which may be expected of two 19 year old parents, there are no other significant factors regarding the mental and physical health of persons involved in this situation.
 F. [Appellee] is found to be the parent more likely to honor and facilitate the visitation and companionship rights. She has consistently allowed [appellant] more companionship than is currently issued by court order. By contrast, [appellant] has refused to return the child as [sic] stated times and has feigned injuries to the child as a way of forcing interacting [sic] with [appellee].
 G. [Appellant] has failed to make all child support payments even when he was found in contempt and where sentencing was deferred pending final resolution of the divorce proceedings.
 H. Neither parent has been previously convicted of any criminal offense * * * .
 I. Neither parent has continuously and wilfully denied the other parent his or her right to visitation, except for the problems listed in the preceding paragraph F.
 J. Neither parent has established or is planning to establish a residence outside this state.
 February 17, 1998 Findings of Facts and Conclusions of Law at 4-5.
The trial court analyzed all the factors in light of the evidence presented at the final hearing. Although appellant argues the evidence shows he demonstrated maturity and parenting skills while appellee demonstrated immaturity, promiscuity, inattentiveness, inability to cope, and alcohol and drug abuse (Brief of Appellant at 10), the record reveals, as the trial court found, acts of immaturity by both parties. Because the trial court is in a better position to observe the witnesses' demeanors and assess their credibility, and because the evidence in the record supports the trial court's conclusions, we find the trial court did not abuse its discretion in granting custody of the minor child to appellee.
Appellant further asserts the trial court impermissibly relied upon the doctrine of tender years in its determination of custody. In its Findings of Facts and Conclusions of Law, the trial court noted, since the child's birth, appellee has been his primary caretaker. February 17, 1998 Findings of Facts and Conclusions of Law at 3. The record clearly substantiates this fact. The mere reference by the trial court to appellee's being Andrew's primary caretaker does not support appellant's assertion the trial court applied the tender years doctrine. Such an assertion is unsupported by the record. As demonstrated supra, the trial court considered each factor set forth in R.C.3109.04(F). Accordingly, we find the trial court did not rely upon the tender years doctrine.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant contends the trial court abused its discretion in ordering spousal support.
A review of a trial court's decision relative to spousal support is governed by an abuse of discretion standard, which is set forth supra. See, Cherry v. Cherry (1981), 66 Ohio St.2d 348.
Pursuant to R.C. 3105.18(C)(1), a trial court must consider certain factors in making determinations of spousal support:
Award of spousal support; modification.
 (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
(a) The income of the parties, from all sources * * *;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
Further, trial courts are governed by the standard and guidelines imposed by the Ohio Supreme Court in Kunkle v. Kunkle
(1990), 51 Ohio St.3d 64, paragraph one of the syllabus:
 Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.
In the instant action, the trial court ordered appellant to pay appellee $100.00 per month, as and for spousal support, for a period of twenty-four months[3]. The trial court indicated appellee was not capable of current employment because of her responsibilities for rearing a young child and attending school on a full-time basis, but would be capable of working after she completed her program. On the other hand, until shortly before the final hearing, appellant was employed at an annual salary of $20,000. The trial court found appellant had a greater earning ability than appellee, and was currently capable of working. Additionally, appellant promised appellee and her parents, at the time of the marriage, he would make sure appellee attended school. At the final hearing, appellant testified he still wanted appellee to attend school and he needed to provide financial assistance to her in order for her to do so.
A review of the trial court's findings clearly reveals the award of spousal support was to help supplement appellee while she attended school. However, the trial court did not reserve jurisdiction, resulting in a non-modifiable award. While the better approach would have been for the trial court to retain jurisdiction in case of a change in circumstances relative to appellee's attendance of school, we do not find the trial court abused its discretion in awarding spousal support.
Appellant's second assignment of error is overruled.
 III
In his third assignment of error, appellant submits the trial court erred in ordering standard companionship.
Pursuant to R.C. 3109.051(F)(2), the Fairfield County Court of Common Pleas, Domestic Relations Division, has established a standard visitation guideline which is codified in Rule 17 of the Local Rules of the Domestic Relations Court. Pursuant to Local R. 17, visitation with children under eighteen months of age is limited to the home. In the instant action, the trial court ordered standard companionship.
A review of the record reveals neither party requested a deviation from Local R. 17. Furthermore, in as much as Andrew is now over eighteen months of age and appellant's visitation rights have automatically changed and are now more liberal, we find appellant's third assignment of error to be moot.
 IV
In his fourth assignment of error, appellant asserts the trial court abused its discretion in ordering him to obtain private life insurance at his own expense.
Appellant argues the trial court's ordering him to obtain insurance was erroneous because "it must be maintained even if [appellant] acquires custody or even if [appellee] predecease [appellant]." Brief of Appellant at 26. In support of his position, appellant relies on Addy v. Addy (1994), 97 Ohio App.3d 204. Appellant further contends the obligation to pay child support ceases upon death.
The trial court ordered appellant to obtain a $25,000 life insurance policy listing appellee as the beneficiary to insure child support would be paid. The trial court provided appellant with the ability to terminate the policy or change the beneficiary when the minor child reached the age of eighteen.
In Addy, supra, the Franklin County Court of Appeals reviewed the trial court's authority to order an obligor spouse to maintain life insurance as security for his spousal support obligation.Id. at 211. The Addy court found "security in the form of life insurance is inappropriate . . . because spousal support terminates upon the death of either party under R.C. 3105.18(B), unless the order containing the award expressly provides to the contrary." Id. Likewise, a child support order does not survive the death of the payor parent unless the payor parent consents.See, Gilford v. Wurster (1983), 24 Ohio App.3d 77.
In the instant action, appellant did not expressly consent to a continuation of child support after his death. Because appellant's child support obligation ceases upon his death, we find "security in the form of life insurance is inappropriate," and the trial court abused its discretion in ordering appellant to maintain life insurance as security for his child support obligation.
Appellant's fourth assignment of error is sustained.
 V
In his final assignment of error, appellant claims the trial court erred in the amount of child support ordered. First, appellant maintains a child support worksheet is not in the record and the failure to include this guideline is reversal error. Additionally, appellant asserts the trial court abused its discretion in setting guideline support when it failed to impute income to appellee, but imputed income to appellant.
When calculating child support, a court must strictly comply with the mandates of R.C. 3113.215. Marker v. Grim (1992),65 Ohio St.3d 139, paragraph 2 of syllabus. "Upon calculation of child support by a trial court pursuant to R.C. 3113.215, that court's calculation will not be disturbed absent an abuse of discretion." Houts v. Houts (1995), 99 Ohio App.3d 701, 704.
Upon review of the record, we find a child support worksheet was, in fact, filed on January 15, 1998. Accordingly, we find no reversible error in this regard.
Pursuant to R.C. 3113.215, a trial court may consider "potential income" when calculating the amount of a child support obligation. R.C. 3113.215(A) provides, in pertinent part:
 (5) "Potential income" means both the following for a parent that the court * * * determines is voluntarily unemployed or voluntarily underemployed:
(a) Imputed income that the court * * * determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community which the parent resides;
(b) Imputed income from any non income-producing assets of a parent * * *
In Rock v. Cabral (1993), 67 Ohio St.3d 108, the Ohio Supreme Court discussed imputed income as follows:
 [I]n calculating and awarding child support, a trial court must consider the "potential income" as well as the gross income of a parent the court determines to be voluntarily unemployed or underemployed. The "potential income" to be imputed to such parent for purposes of calculating his or her support obligation is to be determined * * * by the parent's employment potential and probable earnings based on the parent's recent work history, job qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides.
 Id. at 111.
Whether a parent is voluntarily unemployed is a matter for the trial court to decide, based on the facts of each case, and the decision is not to be disturbed absent an abuse of discretion.Id. at 108.
In the instant action, the trial court found:
 (a) The plaintiff's income based upon his employment at Reynolds Aluminum is $20,328 annually. The plaintiff testified that he may be rehired at this factory. If he is not, the plaintiff can obtain similar employment at a similar earning.
The trial court's finding relative to appellant's income is tantamount to a finding appellant was voluntarily unemployed. The record reveals appellant was collecting unemployment compensation at the time the final hearing. Appellant concedes he testified he thought Reynolds Aluminum was going to rehire him. Appellant did not present any evidence as to alternative employment plans.
After reviewing the transcript and the record in this matter, we find the facts and circumstances support the trial court's finding appellant's unemployment was voluntary. We have no doubt appellant initially became unemployed involuntarily, however, based upon his work history and his failure to submit evidence his continuing unemployment was involuntarily, we cannot say the trial court's decision to impute income was against the manifest weight of the evidence. Accordingly, we find the trial court did not abuse its discretion imputing an annual income of $20,000 to appellant.
Appellant's fifth assignment of error is overruled.
The Judgment Entry/Decree of Divorce of the Fairfield County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part.
By: Hoffman, J., Gwin, P.J. and Wise, J. concur.
Pursuant to App.R. 12(B), the portion of the Judgment Entry/Decree of Divorce entered by the Fairfield County Court of Common Pleas, Domestic Relations Division, is reversed as to the provision obligating appellant to maintain life insurance but is affirmed in every other aspect. Costs assessed to appellant.
[1] The trial court based the temporary award on appellant's income of $17,000/year.
[2] Reynolds Aluminum laid off appellant.
[3] At the time of the hearing, appellee was enrolled full-time in a two year associate's degree program.